UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| LONNIE M. WOODS, | ) | CASE NO. 1:05 CV 2369 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE KATHLEEN M. O'MALLEY |
| v. | ) | |
| | ) | |
| STATE OF OHIO, et al., | ) | MEMORANDUM OF OPINION |
| | ) | AND ORDER |
| Defendants. | ) | |

On October 7, 2005, plaintiff pro se Lonnie M. Woods filed this action under 42 U.S.C. § 1983 against the State of Ohio, Defense Attorney John C. Delaney, and Northcoast Behavioral Healthcare. In the complaint, plaintiff asserts she was denied due process and a speedy trial. She seeks $ 10,000,000.00 in damages.

**Background**

Ms. Woods contends her criminal or probation records were confused with the criminal or probation records of a man, whose name is also Lonnie Woods. This mistake of identity allegedly occurred at some point during the course of criminal proceedings against her. The body of the complaint contains very few facts and it is difficult to determine where the alleged confusion occurred. Much of the information concerning her claims is gleaned from the numerous exhibits

which Ms. Woods attaches to her complaint.

Based on these exhibits, it appears that Ms. Woods was identified as a participant in the assault of Carlton Lewis on September 15, 2002. Mr. Lewis gave a statement to the police on December 3, 2002 stating that he was threatened by a woman named Lonnie Woods and a man identified as "Chris."[1] (Compl. Ex. 14.) He stated that Lonnie Woods attempted to provoke him into a physical altercation but he told her "to go about her business and that I don't fight women." (Compl. Ex. 14.) Ms. Woods allegedly urged Chris to fight with Mr. Lewis but the two males were apparently reluctant to do so. A juvenile named "Danny" then arrived on the scene and struck Mr. Lewis in the face using a set of "brass knuckles." (Compl. Ex. 14.) Mr. Lewis claimed Lonnie Woods was joined by another female named Toni Woods and both women threw various objects at his head while he wrestled with "Danny." Several hours later, Mr. Lewis reported to the Cleveland Clinic where he was diagnosed with a fractured mandible.

The plaintiff was arrested in September 2003 and charged with two counts of assault. Although Ms. Woods includes various documents pertaining to Mr. Lewis's assault in September 2002, there is no indication in the complaint that this was the assault for which she was arrested. It is possible that this is where Ms. Woods believes the alleged mistaken identity occurred. She

---

[1] It appears that the alleged mistake in identity did not occur at the time the police report was made. Ms. Woods claims her identity has been confused with the identity of a man. The victim's statement to the police clearly indicates that the Lonnie Woods to which he is referring is a woman. He also claims the woman was accompanied by Toni Woods. A letter from the plaintiff's son states that his "older sister Tony go [sic] to jail for trying to help my mother... ."(Compl. Ex. 23.) The Juvenile Court complaint against "Danny," the initial assailant, states that the assault took place in the vicinity of 8615 Nevada Avenue, Cleveland, Ohio. (Compl. Ex. 22.) The plaintiff lists her address as 8623 Nevada Avenue, Cleveland Ohio. (Compl. Ex. 25; Civil Cover Sheet.) Mr. Lewis indicated to police the fight had developed as a direct result of problems he was having with his neighbors.

2

indicated at her arraignment that she was indigent and Mr. Delaney was appointed as her counsel. A final pre-trial was held on November 3, 2003 and at that point, supervised release was added as a condition of her bond, indicating her bond could be revoked if she tested positive for use of an illegal substance. Ms. Woods contends that she was called at home the following day and told to report to the Marion Building room 512. At some point after she arrived at the Marion Building, she was told she was in violation of the pretrial supervision order and was arrested. She does not indicate whether she was required to take a drug test on that day and failed, or whether her arrest was already determined prior to the telephone call based on information which may have been attributable to the male Lonnie Woods. It is also possible that this is the point that Ms. Woods believes her records were co-mingled with those of the male Lonnie Woods.

Ms. Woods alleges that upon entering the county jail, she was given "medication by the staff to keep [her] quiet" and was not fully aware of what was happening to her. (Compl. at 2.) On November 12, 2003, Ms. Woods was referred to the court psychiatric clinic to determine if she was competent to stand trial. The report was returned to the court on December 9, 2003 with a finding that Ms. Woods was unable to assist in her defense or understand the nature of the proceedings against her. The court then referred her to the Northcoast Behavioral Healthcare System for restoration to competency.

The plaintiff alleges she consistently "told anyone that would listen that a mistake had been made." (Compl. at 2.) She claims the error was not recognized and she continued to be given medication because she "would not admit to a crime [she] did not commit." (Compl. at 2.) Ms. Woods's social worker sent a letter to a social worker at the Cuyahoga County jail in an attempt to help establish Ms. Woods's identity as distinct from the male Lonnie Woods. Ms. Woods claims the

3

confusion continued to exist and she was held at Northcoast Behavioral Healthcare and labeled as delusional. She indicates she was medicated for two months at this facility in order "to help her understand what [she] was incarcerated for." (Compl. at 3.) She claims someone finally listened to her and discovered a mistake had been made, although she does not state what if any steps were made taken to correct the problem. She was returned to the Cuyahoga County Jail on April 5, 2004.

Finally, Ms. Woods alleges that her attorney, John Delaney, did not pursue her case. She states there was no evidence against her "except for hearsay" and no evidence was turned over to her attorney by the prosecution. (Compl. at 2.) She contends she pleaded for her case to move forward, but the proceedings seemed to stall. Ms. Woods obtained new counsel in March 2004. She indicates that her new attorney, Ed Vargas, discovered "there was no evidence [against her]." (Compl. at 3.) The case against her was dismissed in June 2004. She claims her rights to due process and a speedy trial were violated.

## Analysis

Although pro se pleadings are liberally construed, Boag v. MacDougall, 454 U.S. 364, 365 (1982) (per curiam); Haines v. Kerner, 404 U.S. 519, 520 (1972), the district court is required to dismiss an in forma pauperis action under 28 U.S.C. §1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact.[2] Neitzke v. Williams, 490 U.S. 319 (1989); Lawler v. Marshall, 898 F.2d 1196 (6th Cir. 1990); Sistrunk v. City of

---

[2] An in forma pauperis claim may be dismissed sua sponte, without prior notice to the plaintiff and without service of process on the defendant, if the court explicitly states that it is invoking section 1915(e) [formerly 28 U.S.C. § 1915(d)] and is dismissing the claim for one of the reasons set forth in the statute. McGore v. Wrigglesworth, 114 F.3d 601, 608-09 (6th Cir. 1997); Spruytte v. Walters, 753 F.2d 498, 500 (6th Cir. 1985), cert. denied, 474 U.S. 1054 (1986); Harris v. Johnson, 784 F.2d 222, 224 (6th Cir. 1986); Brooks v. Seiter, 779 F.2d 1177, 1179 (6th Cir. 1985).

Strongsville, 99 F.3d 194, 197 (6th Cir. 1996). For the reasons stated below, this action is dismissed pursuant to §1915(e).

As an initial matter, the State of Ohio is not subject to suit for damages under 42 U.S.C. § 1983. State and federal governments have long possessed immunity from suit in state and federal courts. Alden v. Maine, 527 U.S. 706, 713 (1999). The federal government's immunity is not found in any one provision of the Constitution, but rather "is derived by implication" from the nature of sovereignty itself. Keifer & Keifer v. Reconstruction Fin. Corp., 306 U.S. 381, 388 (1939); Ernst v. Rising, No. 02-2287, 2005 WL 2757534, slip op. at 3-4 (6th Cir. Oct. 26, 2005). For the states, that immunity is supported by the Eleventh Amendment to the United States Constitution. Alden, 527 U.S. at 713-14 (stating that "any doubt regarding the constitutional role of the States as sovereign entities is removed by the Tenth Amendment.") The states' immunity from suits in federal court applies to claims against a state by citizens of the same state as well as to claims against a state by citizens of another state. See Alden, 527 U.S. at 728; Barton v. Summers, 293 F.3d 944, 948 (6th Cir. 2002). The immunity also applies to actions against state officials sued in their official capacity for retroactive relief. See Lapides v. Bd. of Regents, 535 U.S. 613-623 (2002); Edelman v. Jordan, 415 U.S. 651, 664-66 (1974); Rossborough Mfg. Co. v. Trimble, 301 F.3d 482, 489 (6th Cir. 2002). Ms. Woods seeks monetary relief from the State of Ohio. The Eleventh Amendment bars this type of action.

The claims against attorney John Delaney and Northcoast Behavioral Healthcare are also subject to dismissal. To establish a prima facie case under 42 U.S.C. § 1983, Ms. Woods must assert that a person acting under color of state law deprived her of rights, privileges, or immunities secured by the Constitution or laws of the United States. Parratt v. Taylor, 451 U.S. 527, 535

(1981). Actions taken under color of state law are generally limited to those committed by state or local government officials. A private party may be found to have acted under color of state law to establish the first element of this cause of action only when the party "acted together with or ... obtained significant aid from state officials" and did so to such a degree that its actions may properly be characterized as "state action." Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982). An individual may also be considered a state actor if he or she exercises powers traditionally reserved to a state. Jackson v. Metropolitan Edison Co., 419 U.S. 345, 352 (1974). A defense attorney is not considered a state actor under 42 U.S.C. § 1983, Washington v. Brewer, No. 91-1935, 1991 WL 243591 (6th Cir. Nov. 21, 1991); see also, Polk County v. Dodson, 454 U.S. 312, 321 (1981), and there is no indication in the complaint that Northcoast Behavioral Healthcare is a government entity. Merely being a participant in litigation does not make a private party a co-conspirator or joint actor with the state. Dennis v. Sparks, 449 U.S. 24, 28 (1980). The complaint contains no other allegations against Mr. Delaney or Northcoast Behavioral Healthcare which could reasonably suggest that they acted "under color of state law."

Even if Ms. Woods had established that Northcoast Behavioral Healthcare was a government entity, her claims against this defendant would still be subject to dismissal. She contends that employees of Northcoast Behavioral Healthcare failed to recognize or accept that a mistake had been made concerning her identity. As a rule, government entities may not be sued under 42 U.S.C. § 1983 for an injury inflicted solely by employees or agents under a respondeat superior theory of liability. See Monell v. Department of Soc. Servs., 436 U.S. 658, 691(1978). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as

an entity is responsible under § 1983." Id. at 694. The entity can therefore be held liable when it unconstitutionally "implements or executes a policy statement, ordinance, regulation, or decision officially adopted by that body's officers." Id. at 690; DePiero v. City of Macedonia, 180 F.3d 770, 786 (6th Cir. 1999). The complaint contains no suggestion of a custom or policy of the Northcoast Behavioral Healthcare which may have resulted in the deprivation of a federally protected right of the plaintiff.

### Conclusion

Accordingly, this action is dismissed pursuant to 28 U.S.C. §1915(e). The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[3]

IT IS SO ORDERED.

s/ Kathleen M. O'Malley
KATHLEEN M. O'MALLEY
UNITED STATES DISTRICT JUDGE

DATED: January 18, 2006

---

[3] 28 U.S.C. § 1915(a)(3) provides:

An appeal may not be taken in forma pauperis if the trial court certifies that it is not taken in good faith.